**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

JORDAN ZAHLER,                      :
           Plaintiff,            :
                                 :
           v.                    :   Civil No.:  5:25-cv-04215-JMG
                                 :
JACKSON LEWIS P.C., *et al*,        :
           Defendants.           :

---

**MEMORANDUM OPINION**

**Gallagher, J.**                                              **February 11, 2026**

## I.    BACKGROUND

Plaintiff Jordan Zahler ("Plaintiff") alleges nine causes of action against Defendants Gregory Alvarez ("Alvarez") and his law firm, Jackson Lewis P.C. ("Jackson Lewis") (collectively, "Defendants"). Plaintiff's claims include whistleblower retaliation under the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5567 (Count I); violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count II); civil conspiracy (Count III); unauthorized practice of law (Count IV); tortious interference with business relations (Count V); defamation (Count VI); fraud (Count VII), false advertising under the Lanham Act (Count VIII); and for declaratory judgment (Count IX). Plaintiff alleges that the action arises from Defendants' knowing representation of a phantom entity, Dejavoo Systems LLC ("Dejavoo").

Before filing this action, Plaintiff was employed by Dejavoo, and Defendants served as Dejavoo's legal counsel. In March 2024, while Plaintiff was still employed by Dejavoo, questions arose regarding whether certain credit card transactions within Dejavoo's system were properly encrypted. Compl. ¶¶ 18-21. Plaintiff asserts that his purported whistleblower status stems from

this encryption issue. Defendants, however, maintain that the Complaint and its exhibits show that Dejavoo raised the encryption concern with Plaintiff and other employees, not the other way around.

Shortly after, Plaintiff's employment with Dejavoo terminated. Although Plaintiff alleges that he was fired by Dejavoo for threatening to report the encryption issue, Defendants argue that the documents attached to the Complaint contradict that narrative. Compl. ¶¶ 23-24, 40-41; *see e.g.*, Exhibit AB (April 25, 2024, Dejavoo letter advising Plaintiff that he had "failed to return to work, effectively resigning voluntarily and abandoning [his] position.").

Plaintiff initiated two administrative proceedings arising from his termination: a whistleblower retaliation claim under the CFPA before an Occupational Safety and Health Administration ("OSHA") tribunal, and an unemployment compensation claim before the Pennsylvania Department of Labor. Compl. Exhibits AC, AB-3.

Defendants first contend that all of Plaintiff's claims are barred under the *Noerr-Pennington* doctrine because they arise from Defendants' representation of Dejavoo in litigation or pre-litigation contexts. Defendants further argue that independent of *Noerr-Pennington*, each of Plaintiff's individual causes of action fail to state claims upon which relief can be granted. In the alternative, Defendants request that the Court stay this action pending resolution of Plaintiff's retaliatory discharge proceeding before an OSHA tribunal, asserting that the issues raised in the administrative matter substantially overlap with those presented here.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## III.    DISCUSSION

### A.  CFPA Whistleblower Retaliation Claim

Plaintiff alleges that he was improperly fired for being a whistleblower. According to Plaintiff, Defendants are liable for whistleblower retaliation under the CFPA because they participated in Plaintiff's termination, "declaring [Plaintiff's] warnings false and defamatory one day after security breaches while possessing proof of their accuracy." Compl. ¶ 40. However, Plaintiff's claim is flawed because he did not work for Jackson Lewis or Alvarez, and neither Defendant fired him. To establish a claim for whistleblower retaliation, an employee must prove, among other elements, that his *employer* took unfavorable action against him.

Plaintiff's claim fails as a matter of law because he has not sued a proper party here. Section 5567 of the CFPA imposes liability on a "covered person" or "service provider" that employs the

whistleblower and takes adverse action against them. 12 U.S.C. 5567(a).[1] Plaintiff, however, does not sue his former employer in this suit. He instead brings this claim against his former employer's counsel. Defendants were not his employer, did not supervise him, and did not take any employment-related action against him. Indeed, Plaintiff worked for Dejavoo (not Defendants) and was terminated by Dejavoo (not Defendants).[2] Because the CFPA's whistleblower does not create liability for an employer's attorneys, Plaintiff cannot satisfy the statutory elements of a Section 5567 claim and his claim for whistleblower retaliation is dismissed with prejudice.

## B. RICO Claim

Plaintiff's RICO claim seeks to damages for his alleged retaliatory firing, claiming damages of loss of employment and its benefits. Defendant argues that Plaintiff does not have standing to bring a RICO claim based on his alleged retaliatory discharge because discharge from employment, even if wrongful and actionable on some other basis, is not "racketeering" activity. Defendants further argue that, even if Plaintiff had standing, he fails to plead the required racketeering activity element.

Courts have consistently held that in order for a plaintiff to assert standing, a defendant's RICO violation must have caused the plaintiff's injury. For example, in *Beck v. Prupis*, 529 U.S.

---

[1] The CFPA defines a "covered person" as one who offers or provides consumer-financial products or services, and a "service provider" as one who provides material services in connection with such products or services. 12 U.S.C. §§ 5481(6), (26). Legal representation in litigation does not constitute the offering or provision of consumer-financial services, nor does it qualify as a material service connected to such products. Accordingly, outside counsel for an employer does not fall within either statutory category and cannot be held liable under § 5567's whistleblower-retaliation provision.

[2] Plaintiff attached a termination letter to his Complaint. The termination letter further establishes that Dejavoo terminated Plaintiff from his employment with Dejavoo. *See* Exhibit AB to Compl. The letter is addressed to Plaintiff on Dejavoo letterhead, it is signed by Dejavoo's human resources coordinator, and writes "to confirm that [Plaintiff's] employment with Dejavoo Systems, LLC has ended.").

494, 505 (2000), an individual was terminated after reporting to authorities that certain company directors were engaged in fraud. The plaintiff in *Beck* alleged that his termination constituted an overt act in furtherance of a RICO conspiracy and thus supported a civil RICO claim. The Supreme Court, however, rejected that argument, holding that only a direct violation of Section 1962 (i.e., an actual act of racketeering) can serve as the predicate for a civil RICO cause of action. *See Beck v. Prupis*, 529 U.S. 494, 505 (2000); *see also Johnson v. Hoffa*, 196 Fed. App'x 88, 90 (3d Cir. 2006) ("An allegation that a plaintiff is injured merely by a non-racketeering act in furtherance of a broader RICO conspiracy is insufficient to confer standing under the statute.").

All RICO plaintiffs must satisfy RICO's standing provision. Section 1964(c) requires a RICO plaintiff to allege (1) an injury to the plaintiff's business or property (2) proximately caused by the defendant's RICO violation. *See In re Avandia Marketing, Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 638 (3d Cir. 2015). Case law makes clear that "a plaintiff fired for complaining about or reporting allegedly illegal acts cannot bring a RICO claim; the plaintiff must be a direct victim of an act of racketeering." *DiGiglio v. U.S. Xpress, Inc.*, 293 F. Supp. 3d 522, 526 (E.D. Pa. 2018); *see also Beck v. Prupis*, 529 U.S. 494, 505 (2000) ("[W]e conclude that injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO is not sufficient to give rise to a cause of action… As at common law, a civil conspiracy plaintiff cannot bring suit under RICO based on injury caused by *any* act in furtherance of a conspiracy that might have caused the plaintiff injury."); *Johnson v. Hoffa*, 196 Fed. App'x 88, 90 (3d Cir. 2006) ("For an overt act to qualify as "an act of racketeering or otherwise wrongful under RICO," that act must be "independently wrongful" under some "substantive provision" of the RICO statute. An allegation that a plaintiff is injured "merely by a non-racketeering act in furtherance of a broader RICO conspiracy is insufficient to confer standing.").

This Court agrees with Defendants that Plaintiff's theory runs afoul of the rule requiring a RICO plaintiff to allege injury proximately caused by racketeering, insofar as the termination of employment is not, as a matter of law, a racketeering act. Plaintiff has likewise failed to allege any other qualifying predicate act. Under 18 U.S.C. § 1961, "racketeering activity" is limited to a defined set of federal offenses and to certain serious state-law crimes, including "murder, kidnapping, gambling, arson, robbery, bribery, [and] extortion," among others. 18 U.S.C. § 1961(1)(A). The acts Plaintiff identifies (identity theft, purported Lanham Act violations, and alleged "acquisition fraud") do not fall within the statutory definition and therefore cannot serve as predicate acts for purposes of RICO.

Plaintiff also claims obstruction of justice under 18 U.S.C. § 1503 as a predicate act, but that does not apply here. Section 1503 is directed to interference with jurors and court officers, and the facts alleged in the Complaint do not fall within its scope. 18 U.S.C. § 1503(a) (prohibiting corrupt efforts to "influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States"). Plaintiff further attempts to rely on mail and wire fraud as predicate acts. Allegations of mail or wire fraud, however, must satisfy "the heightened pleading requirement of Federal Rule of Civil Procedure 9(b)," which demand that a plaintiff plead the "who, what, when, and where" of the alleged fraudulent conduct. *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 Fed. Appx. 227, 231 (3d Cir. 2003). Plaintiff's Complaint provides none of these particulars and therefore fails to state mail or wire fraud as predicate acts. Simply asserting that Defendant used the mail or wires in connection with an allegedly wrongful act is insufficient.

Plaintiff's remaining alleged predicate acts are even more attenuated. He points to Dejavoo's purported "phantom" existence, alleged money laundering, unspecified impropriety

involving PPP loans, and the submission of a position statement in an ongoing OSHA matter. Yet, Plaintiff never explains how any of these allegations relate to his claims or how they could plausibly constitute predicate acts capable of supporting a RICO cause of action, let alone how they proximately caused him any injury. The Complaint offers no coherent theory connecting these assertions to a cognizable RICO violation. Because Plaintiff fails to bridge these gaps, his RICO claim cannot stand and must be dismissed without prejudice.[3]

### C. Civil Conspiracy Claim

Plaintiff alleges that Defendants conspired to "represent non-existent entities; conceal $477,764 in PPP fraud; retaliate against a protected whistleblower; and obstruct federal OSHA proceedings." Compl. ¶ 61. He further asserts that this purported conspiracy impaired his ability to pursue innovations with national-security implications, resulting in irreparable harm to himself and the public interest. *Id.* Defendants respond that the conspiracy claim fails for two independent reasons: first, an entity cannot conspire with itself; and second, Plaintiff has not identified any viable underlying tort that could support a civil conspiracy claim.

A civil conspiracy claim has three essential elements: (i) two or more persons acting in concert; (ii) an agreement between them; (iii) with the intent to commit an unlawful act or to commit a lawful act by unlawful means. *See Malmros v. Jones*, 2004 WL 632726, at *6 (E.D. Pa. Feb. 27, 2004). The first element is not satisfied where the alleged conspirators are a corporation and its officers or employees. Although "corporations and other corporate entities… are separate and legally distinct from the people they employ," they "can only act through their officers and employees," and thus, "the intra-company conspiracy doctrine treats allegations that a corporation

---

[3] Because Plaintiff is proceeding *pro se*, the Court permits him to amend his RICO claim unless doing so would be futile. Should Plaintiff choose to amend, he must attempt to fill the gaps in his allegations and present a coherent theory that connects his assertions to a cognizable claim.

and its employee conspired as really alleging that a single, corporate entity has conspired with itself. *Houser v. Feldman*, 600 F. Supp. 3d 550, 570 (E.D. Pa. 2022). Therefore, Plaintiff's allegations that an entity has conspired with its employees fails to meet the first requirement of a civil conspiracy. Because Defendants and their board cannot, as a matter of law, conspire with one another, Plaintiff has not plausibly alleged the first element of a civil conspiracy, and the claim must be dismissed with prejudice.[4]

### D.  Unauthorized Practice of Law Claim

Plaintiff asserts a claim against Alvarez for the alleged unauthorized practice of law arising from Defendants' participation in an unemployment compensation hearing and an OSHA administrative proceeding. Compl. ¶¶ 67-69. Defendant contends that the claim fails for three reasons. First, Alvarez did not engage in the authorized practice of law by representing Dejavoo in an unemployment compensation hearing because such representation does not constitute the practice of law. Second, Alvarez did not engage in the unauthorized practice of law by representing Dejavoo in the OSHA administrative hearing because participation in such a proceeding likewise is not the practice of law and does not require attorney representation. Third, a non-client has no cause of action for unauthorized practice, as violations of ethical rules governing the practice of law do not give rise to private liability. Defs.' Mot. to Dismiss, ECF No. 27.

Plaintiff's unauthorized practice of law claim fails as a matter of law because a non-client has no private cause of action for such a violation. The Pennsylvania statute governing the

---

[4] The conspiracy claim fails for a second, independent reason: Plaintiff has not alleged any viable underlying tort. A civil conspiracy is not a standalone cause of action but a vehicle for imposing vicarious liability for an underlying tort. *Levin v. Upper Makefield Twp.*, 2003 WL 21652301, at *11 (E.D. Pa. Feb. 25, 2003). Thus, "as a prerequisite to civil conspiracy liability, the plaintiff must prove that the defendants have some underlying tort liability." *Id.* Because Plaintiff's accompanying tort claims are subject to dismissal, the conspiracy claim necessarily fails as well.

unauthorized practice of law, 42 Pa. C.S.A. § 2524(c), authorizes criminal penalties and permits courts to issue injunctive relief, but it does not create an independent civil remedy for damages on behalf of *non-clients* based solely on an alleged breach of ethical or licensing rules. As Plaintiff is not, and never was, Defendant's client, and he identifies no separate actionable tort or statutory violation beyond the alleged unauthorized practice itself, the Court need not reach the substance of the claim, and it will be dismissed with prejudice.

### E. Tortious Interference with Business Relations Claim

Plaintiff next asserts a claim for tortious interference with business relations. He alleges that he had secured "federal contractor registrations, joining the US Faster Payment Council's QR Code Interface Working Group" and was "leveraging his licensed camera-less QR code technology," but these efforts were "systematically undermined by Defendants' ongoing retaliation." Compl. ¶ 73. He further contends that Defendants intentionally interfered with his business prospects by "publishing false statements about Plaintiff's disclosures; facilitating wrongful termination; destroying Plaintiff's professional reputation; and causing financial hardship," which he claims resulted in the loss of key industry relationships, innovation partnerships, and opportunities to engage with other stakeholders. *Id.* at ¶ 74. According to Plaintiff, these actions caused him to lose business opportunities and suffer economic harm.

To state a claim for tortious interference with contractual relations, a plaintiff must allege: (1) existing or prospective contractual relations with a third party; (2) purposeful action by the defendant intended to harm that relation or prevent it from occurring; (3) the absence of privilege or justification; and (4) actual legal damage as a proximate result of defendant's conduct. *Maverick Steel Co. v. Dick Corp./Barton Malow*, 54 A.3d 352, 355 (Pa. Super. 2012). Where the claims involve a prospective contractual relationship, the plaintiff must show "something more than a

mere hope," specifically "an objectively reasonable probability that such a contract would arise." *UniStrip Techs., LLC v. LifeScan, Inc.*, 153 F. Supp. 3d 728, 742 (E.D. Pa. 2015). This requires demonstrating that, absent the alleged interference, a contract likely would have been formed. *Id.*

Plaintiff's claim for tortious interference must be dismissed because the Complaint does not adequately plead the elements of the cause of action. Plaintiff contends that his "federal contractor status and provisional patents constituted concrete business prospects destroyed by Defendant's actions." Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 30. This conclusory allegation does not remedy the deficiencies in Plaintiff's Complaint. Plaintiff identifies no specific business relationships or prospective contractual opportunities, nor does he plausibly allege how Defendants' conduct intentionally or improperly interfered with any such identified relationships. Without factual allegations describing the particular opportunities purportedly lost and the manner in which Defendants' conduct caused that loss, Plaintiff has not stated a viable claim for tortious interference.[5]

### F. Defamation Claim

Plaintiff brings a claim for defamation per se, alleging that "Defendant Jackson Lewis published to third parties that Plaintiff's security warnings were false and defamatory." Compl. ¶ 78. Plaintiff contends that these statements were untrue, asserting that Defendants possessed reports corroborating the accuracy of his warnings and that, only weeks later, Defendants' client, Dejavoo, acquired a company to replace the very technology Plaintiff had identified. In Plaintiff's view, the acquisition of replacement technology so soon after labeling his warnings "false"

---

[5] Plaintiff's claim for tortious interference with business relations is dismissed without prejudice, and Plaintiff is granted leave to amend. Should he choose to amend, he must adequately plead the elements of the claim by identifying specific business relationships or prospective contractual opportunities and alleging how Defendants' conduct intentionally or improperly interfered with those identified relationships.

demonstrates that the warnings were, in fact, accurate. Plaintiff further alleges that Defendants' statements harmed him by prejudicing third parties against him, damaging his professional reputation, and causing actual reputational and economic injury. He also asserts that Defendants acted with actual malice, claiming that they knew the statements were false when made.

Defendants contend the defamation claim must be dismissed because the challenged statements were directed to Plaintiff's attorney, not to Plaintiff. The email containing the alleged defamation reflects that Plaintiff's former attorney, Tucker Hull ("Hull"), sent correspondence to Alvarez, and the allegedly defamatory statements appeared in Alvarez's response to Hull's email.[6] As Defendants note, the email was addressed and sent to Hull, and it begins by stating "[W]e are appalled by your [Hull's] letter that is replete with false and defamatory allegations." Defs.' Mot. to Dismiss, Exhibit 4. Defendants argue that the alleged defamation was directed to Hull, and not to Plaintiff. In addition, Defendants contend that, even if the alleged defamation applied to Plaintiff, it is protected by the litigation privilege and not actionable as a matter of law.

To state a claim for defamation, a plaintiff must allege: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) that the communication applies to the plaintiff; (4) that the recipient understood its defamatory meaning; (5) that the recipient understood it as referring to the plaintiff; and (6) special harm resulting to the plaintiff for its publication. See 42 Pa. C.S.A. § 8343(a); *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 579–80 (E.D. Pa. 1999). A claim for defamation per se further requires that the challenged words impute one of the

---

[6] Plaintiff attached only a portion of this email as Exhibit X to his Complaint. The full email chain was provided by Defendants and attached to their Motion to Dismiss as Exhibit 4. The Court relies on this email because, as here, when a document attached to a Motion to Dismiss "is integral or explicitly relied upon" in Plaintiff's Complaint, the document may be considered. *Douglas v. Kensington Cmty. Corp. for Individual Dignity*, 775 F. Supp. 3d 881, 891 (E.D. Pa. 2025).

following: (1) a criminal offense, (2) a loathsome disease, (3) business misconduct, or (4) serious sexual misconduct. *Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990).

The litigation privilege confers immunity on communications made in connection with judicial proceedings that are "pertinent and material to the redress or relief sought." *Ralston v. Garabedian*, 676 F. Supp. 3d 325, 340 (E.D. Pa. 2021). This privilege extends beyond statements made in open court to encompass pleadings and informal communications, including "preliminary conferences and correspondence between counsel undertaken in furtherance of the client's interest." *Weiser Law Firm, P.C. v. Hartleib*, 665 F. Supp. 3d 647, 663 (E.D. Pa. 2023) (citing *Richmond v. McHale*, 35 A.3d 779, 785 (Pa. Super. Ct. 2012). Courts have consistently held that "statements by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." *See Richmond v. McHale*, 35 A.3d 779, 785 (Pa. Super. Ct. 2012); *Binder v. Triangle Publications, Inc.,* 442 Pa. 319, 275 A.2d 53 (1971); *Post v. Mendel,* 510 Pa. 213, 507 A.2d 351 (1986); *Triester v. 191 Tenants Association,* 272 Pa. Super. 271, 415 A.2d 698 (1979). The privilege likewise applies to pre-litigation communications, or those made "prior to the institution of proceedings," when they are "pertinent and material" to the dispute and issued in the ordinary course of preparing for contemplated proceedings. *Greenberg v. McGraw*, 161 A.3d 976, 982 (Pa. Super. 2017); *see also Milliner v. Enck*, 709 A.2d 417, 420 (Pa. Super. 1998) ("It is clear that an allegedly defamatory communication is absolutely privileged when it is published prior to a judicial proceeding as long as that communication has a bearing on the subject matter of the litigation.").

Plaintiff's defamation claim must be dismissed because Defendants' alleged statements are barred by the litigation privilege. The email at issue was a communication between attorneys

concerning the subject matter of an ongoing dispute and was made in furtherance of their respective clients' interests. Such communications, even if made in an informal email exchange between counsel, are absolutely privileged so long as they are pertinent to the contemplated or ongoing proceedings. The characterization of Plaintiff's warnings as "false and defamatory" falls squarely within this protection. Because the privilege applies even to pre-litigation communications that are material to the dispute and made in the ordinary course of preparing for litigation, the statements here cannot, as a matter of law, form the basis of a defamation claim. Accordingly, Plaintiff's defamation claim is dismissed with prejudice.

### G. Fraud Claim

Plaintiff alleges Defendants committed fraud by materially misrepresenting that "[Dejavoo] was a legitimate entity," that "Plaintiff's warnings were false," and "that their client [Dejavoo] did not violate consumer protection laws." Compl. ¶ 84. He further asserts that these statements were fraudulent because they "were made to induce reliance by tribunals and third parties." *Id.* at ¶ 86. Defendants contend that the fraud claim must be dismissed because Plaintiff has not alleged that *he* relied on any purported misrepresentation and has not satisfied the heightened pleading requirements applicable to fraud. Defendants note that Plaintiff appears to concede the reliance deficiency, pointing out that Plaintiff stated, "Regarding fraud, the relevant reliance was by tribunals and agencies who accepted Defendants' false representations about phantom entities," rather than by Plaintiff himself. Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 30.

A fraud claim requires a plaintiff to allege: (1) a misrepresentation; (2) the materiality of that misrepresentation; (3) its falsity; (4) an intent to mislead; (5) justifiable reliance; and (6) resulting injury proximately caused by that reliance. *Santana Prods. Inc. v. Bobrick Washroom*

13

*Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005). Particularly relevant here, a plaintiff must show that it "justifiably relied on the misrepresentation" to state a fraud claim. *N. Penn Towns, LP v. Concert Golf Partners, LLC*, 554 F. Supp. 3d 665, 708 (E.D. Pa. 2021). Fraud allegations are also subject to Rule 9(b)'s heightened pleading standard, which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Because Plaintiff acknowledged that he has not alleged one of the essential elements of fraud, the claim cannot stand and must be dismissed with prejudice.

### H. Lanham Act False Advertising Claim

Plaintiff's Lanham Act false-advertising claim is based on the allegation that Dejavoo falsely represented that its transactions were encrypted. Compl. ¶¶ 90-93. Defendants contend that the claim fails as to them because the challenged advertising was created and disseminated by their client, Dejavoo, not by Defendants themselves. They note that the Complaint contains no factual allegations showing that Defendants participated in, contributed to, or had any role in the alleged advertising. Defendants further contend that Plaintiff's only attempt to link Defendants to this claim is Plaintiff's assertion that the representation, "published more than a year after Plaintiff's termination" occurred while Defendants continued representing Dejavoo. Compl. ¶ 91. Defendants argue that the Lanham Act does not impose liability for another party's advertising, and because Plaintiff has not alleged that they engaged in any actionable advertising conduct, he has failed to plead the elements of a false-advertising claim against them.

The Court agrees. While Plaintiff argues that Defendants were "active participants in commercial fraud" because of their "defense of" Dejavoo's allegedly false advertising, the law is clear. A Lanham Act false advertising claim requires that a defendant has made "false or misleading statements." *Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Rhone–*

14

*Poulenc Rorer Pharmaceuticals, Inc.*, 19 F.3d 125, 129 (3d Cir. 1994). Plaintiff has not alleged that Defendants made any false or misleading statements about a product, intended to deceive consumers, or to influence purchasing decisions in interstate commerce, nor has he alleged injury of the type the Lanham Act protects, such as diminished sales or loss of good will. *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000). This claim is therefore dismissed.[7]

## I. Declaratory Judgment

Plaintiff seeks a series of declarations, including that he is a protected whistleblower under the CFPA; that Dejavoo Systems, LLC does not exist in New York; that Defendants violated federal and state law, obstructed justice, committed fraud, and engaged in racketeering activity; and that Alvarez engaged in the unauthorized practice of law while Jackson Lewis represented "phantom entities." Defendants contend that the declaratory judgment claim must be dismissed because the relief requested is duplicative of Plaintiff's other claims. This Court agrees.

The Court declines to issue declaratory relief and dismisses the declaratory judgment claim. Declaratory relief is discretionary, and courts routinely decline to entertain such claims where the requested declaration would merely duplicate the relief available through other causes of action. *LM Gen. Ins. Co. v. LeBrun*, 470 F. Supp. 3d 440, 455 (E.D. Pa. 2020). When adjudication of the remaining claims will necessarily resolve the issues underlying the request for declaratory judgment, such relief serves no useful purpose. Accordingly, because Plaintiff's

---

[7] Plaintiff's false advertising claim is dismissed without prejudice, and he is granted leave to amend. Should he choose to amend, he must specifically plead the elements of the claim, including identifying the particular false or misleading statements allegedly made by Defendants.

request for a declaration rests on the same facts and legal theories as his other claims, the declaratory judgment claim is dismissed.[8]

### J. *Noerr-Pennington* Doctrine

Defendants assert that Plaintiff's claims are also barred by the *Noerr-Pennington* doctrine. They maintain that they are immune from liability because each allegation of misconduct arises from their legal representation of Plaintiff's former employer, Dejavoo, including their communications with Plaintiff and his former counsel regarding Plaintiff's false-advertising allegations and termination, their representation of Dejavoo in OSHA and unemployment proceedings, and their settlement discussions with Plaintiff. They argue that, as a matter of law, all of the conduct alleged as wrongdoing constitutes protected petitioning activity and is therefore immune from liability.

Notwithstanding the extensive briefing on this issue, the Court need not address the merits of the *Noerr-Pennington* doctrine at this stage. The applicability of the doctrine, along with the competing arguments concerning the sham-litigation exception, need not be resolved because the Court dismisses Plaintiff's claims on independent grounds. Specifically, as set forth above, each of the challenged claims fails to state a claim upon which relief can be granted under Rule 12(b)(6). Accordingly, at this time, further analysis of the *Noerr-Pennington* argument is unnecessary to the disposition of this matter.

---

[8] As noted, Plaintiff's request for declaratory relief is based on the same facts and legal theories underlying his substantive claims and therefore cannot stand independently. While this claim is dismissed without prejudice, and Plaintiff may amend his claim, he may not seek declaratory relief premised on any causes of action dismissed with prejudice.

16

## IV.    CONCLUSION

This case reaches its end with the simple absence of any viable claim.[9] For the foregoing reasons, each of Plaintiff's claims fails to state a legally cognizable cause of action. Defendant's Motion to Dismiss (ECF No. 27) is therefore **GRANTED**. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

[9] As a final matter, the Court acknowledges that Plaintiff has filed a Petition for Writ of Mandamus with the Third Circuit and, in this Court's view, that petition lacks merit. Moreover, despite the pendency of that petition, Plaintiff has not sought a stay of these proceedings, and the Court sees no basis on which such a request would be granted. The Court therefore issues its ruling on Defendants' Motion to Dismiss notwithstanding the Petition for Writ of Mandamus.